JOHNSON v. JOHNSON et al.

(Supreme Court, Appellate Division, Second Department. April 24, 1912.)

1. HUSBAND AND WIFE (§ 281*)—SEPARATION AGREEMENTS—REFORMATION—JURISDICTION.

　　The Supreme Court has equitable jurisdiction of a suit by a wife to cancel or modify a separation agreement, so far as it limits her weekly allowance for support, on the ground that she was induced to agree to the amount fixed by fraud or duress.

　　[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 1061; Dec. Dig. § 281.*]

2. HUSBAND AND WIFE (§ 281*)—SEPARATION AGREEMENTS—REFORMATION—COUNSEL FEES.

　　In a suit by a wife to cancel or modify a separation agreement so far as it limits her weekly allowance for support, she is entitled to allowance of counsel fees independently of any statute.

　　[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 1061; Dec. Dig. § 281.*]

Appeal from Special Term, Kings County.

Action by Esther Jennie Johnson against Wilbur C. Johnson and another. Order denying plaintiff's motion for counsel fees, and she appeals. Reversed and remanded.

Argued before JENKS, P. J., and HIRSCHBERG, BURR, WOODWARD, and RICH, JJ.

E. Crosby Kindleberger, of New York City, for appellant.

Henry Smith, of New York City (James S. Darcy, of New York City, on the brief), for respondent Johnson.

HIRSCHBERG, J. [1, 2] In 1902, the plaintiff executed a written separation agreement with her husband, the defendant Wilbur C. Johnson, and the defendant John F. Carson as trustee, whereby it was provided, among other things, that the said Wilbur C. Johnson would pay the sum of $25 each week for her support and maintenance, and whereby she agreed to accept said sums in full satisfaction for her support, maintenance, and all alimony whatsoever. This action is brought to cancel or modify said agreement in so far as it limits her to said sum of $25, and to increase that sum provided for her support and maintenance to at least the sum of $3,000 a year. She asks such relief on the ground that she was induced to agree to the sum specified in the agreement "under moral duress and compulsion" and by undue influence exercised over her by her husband. The answer of the husband denies the charges of duress and undue influence, and after the joinder of issue the plaintiff's attorney moved at Special Term for an order allowing him counsel fees in the action. The Special Term denied that motion on the ground that its power to award counsel fee to the wife's attorney to be paid by the husband in litigation between them is limited solely to the matrimonial actions enumerated in title 1 of chapter 15 of the Code of Civil Procedure, viz., actions for annulment, divorce, or separation, and cited the cases of Ramsden v. Ramsden, 91 N. Y. 281, and Phillips v. Peacock, 63 Misc. Rep. 520,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

117 N. Y. Supp. 625, as authority for its decision. The plaintiff appeals from the order denying said motion for counsel fees.

In Ramsden v. Ramsden, supra, all that was held was that an action could not be maintained by a wife against her husband solely to obtain a judgment providing for her maintenance and support.

The facts in Phillips v. Peacock, supra, are more nearly analogous to the case at bar. There, in an action by the trustee designated in a separation agreement to compel specific performance of the agreement by the husband, the Special Term of this court held that it did not have jurisdiction to grant an order compelling the husband to pay alimony and counsel fees during the pendency of the action. The court, however, based its decision on the fact that the wife was not in court asserting her rights as a wife and asking for means wherewith to maintain them. The plaintiff in that action was the trustee, and it was held that, having made the agreement at arm's length with the husband, he could not, while insisting upon the letter of the contract, in his capacity as trustee obtain the benefits provided for a wife as such. The learned court said (page 523 of 63 Misc. Rep., page 627 of 117 N. Y. Supp.):

"If the wife were bringing an action herself for the purpose of setting aside the agreement or ignoring it and electing to stand upon her rights as a wife, a different case would be presented."

Precisely such a different case is presented by the case at bar, where the wife, standing on her rights as such, seeks as plaintiff in a suit in equity to set aside or modify her separation agreement. Research does not disclose any authoritative decision in this state regarding her right to the assistance of a counsel fee from the husband to enable her to prosecute such a suit. The suit is in equity for the cancellation or reformation of a contract, and there can be no serious question regarding the jurisdiction of the Supreme Court to entertain such a suit and to decree the relief prayed for in the complaint upon proof that the plaintiff's consent to the contract was induced by the defendant's fraud or duress.

The case of Hungerford v. Hungerford, 161 N. Y. 550, 56 N. E. 117, is an instance where a separation agreement was set aside as being inadequate for the wife's support and executed by her inadvisedly as a result of her husband's prior ill treatment. So, too, the enforceability of separation agreements in equity, although questioned at one time, is now thoroughly established. See Walker v. Walker, 9 Wall. 743, 19 L. Ed. 814; Pettit v. Pettit, 107 N. Y. 677, 14 N. E. 500; Galusha v. Galusha, 116 N. Y. 635, 22 N. E. 1114, 6 L. R. A. 487, 15 Am. St. Rep. 453; Carson v. Murray, 3 Paige, 483, and Mann v. Hulbert, 38 Hun, 27. It would seem that since the Domestic Relations Law (Laws 1896, c. 272, § 21), such agreements may be enforced at law as well as in equity. Winter v. Winter, 191 N. Y. 462, 84 N. E. 382, 16 L. R. A. (N. S.) 710.

The Court of Chancery in this state, prior to any statute on the subject, had jurisdiction to decree the nullity of the marriage status itself, when the consent to the contract had been induced by fraud or duress. Ferlat v. Gojon, 1 Hopk. Ch. 478, 14 Am. Dec. 554. In

Wightman v. Wightman, 4 Johns. Ch. 343, Chancellor Kent, in the absence of statutory authority, annulled a marriage with a lunatic. These cases depended upon the general jurisdiction of chancery to annul fraudulent contracts or to relieve from contracts which were not the result of a meeting of the minds. It was said that like jurisdiction was possessed by the English Court of Chancery, although seldom if ever exercised by that court, owing to the established jurisdiction of the ecclesiastical courts with power to grant summary remedies in all matrimonial causes. Such chancery jurisdiction, being based on the general jurisdiction of that court in cases of lunacy and fraud rather than on the jurisdiction of the ecclesiastical courts, did not extend to cases beyond such general chancery jurisdiction; and the same court that decided the Ferlat Case, supra, accordingly held that it had no inherent power to annul a marriage for impotency. Burtis v. Burtis, 1 Hopk. Ch. 557, 14 Am. Dec. 563.

In view of these decisions, it would seem clear that equity, independent of any statutory power, has inherent jurisdiction to entertain the plaintiff's suit and upon proper proof to revoke or modify the separation agreement. The court vested with this jurisdiction, unlike a common-law court, possesses "general powers to adjust remedies and annex conditions to the exercise of rights and the redress of injuries." Griffin v. Griffin, 47 N. Y. 134, 141. It possesses every incidental power necessary for the proper exercise of its jurisdiction. Higgins v. Sharp, 164 N. Y. 4, 8, 58 N. E. 9. In the exercise of such necessary incidental power a counsel fee was awarded the wife in Griffin v. Griffin, supra, at the termination in her favor of an action instituted by her husband to annul their marriage, although no express statutory authority for such allowance existed; and in Higgins v. Sharp, supra, the same court held the award of a counsel fee and alimony to the wife pending the termination of her husband's action against her for annulment of the marriage to be an incidental power necessary to the exercise of the statutory jurisdiction to entertain the annulment action, and not dependent upon any express statutory authorization. Where, however, the wife attacks the validity of the marriage, which is the basis of the husband's liability for her support, equity will not compel the payment of alimony or counsel fee, in the absence of statutory authorization therefor. Jones v. Brinsmade, 183 N. Y. 258, 76 N. E. 22, 3 L. R. A. (N. S.) 192, 111 Am. St. Rep. 746, 5 Ann. Cas. 378.

A counsel fee to the wife is undoubtedly often necessary to enable her adequately to invoke the exercise of equitable jurisdiction for the enforcement, revocation, or modification of her separation agreement, and it would seem that in such cases equity may decree the payment of such fees as a power incidental to its general jurisdiction over the main issue. Instances are not wanting where equity, in suits analogous to the case at bar, has awarded the wife counsel fees or maintenance as necessary incidents to the proper enforcement of its general jurisdiction.

Yeo v. Yeo, 2 Dickens' Rep. 498, decided by the English Chancery in 1774, was a suit by the wife against the husband for specific performance of articles between them and for alimony, and the

court ordered the payment of £500 by the husband for the purpose of enabling her to prosecute the suit. In Head v. Head, 3 Atk. 295, decided by the same court in 1745, the plaintiff sued her husband for specific performance of separation articles, and the court granted her an allowance for maintenance pending the suit. In Culver v. Culver, 8 B. Mon. (Ky.) 128, the wife sued the administrator of her husband's estate for specific performance of an antenuptial agreement providing for her support after his death, and the court granted her an allowance for support from the estate pending the determination of the suit. It said (page 129):

"As the court of equity has undoubted jurisdiction of the principal of the object of the suit, the specific execution of the contract for the support of the complainant, and as upon the record as it stands she is certainly entitled to a support from the estate of her late husband, the power of decreeing an allowance during the pendency of her suit for specific execution is but an incident of that suit."

The facts existing in the cases cited by the respondent's counsel are not analogous with those presented in the case herein. In Lake v. Lake, 194 N. Y. 179, 87 N. E. 87, the relation of husband and wife, which the court declared was the necessary basis of an allowance for counsel fees, had been terminated by a final decree of divorce. Erkenbrach v. Erkenbrach, 96 N. Y. 456; Walker v. Walker, 155 N. Y. 77, 49 N. E. 663; Livingston v. Livingston, 173 N. Y. 377, 66 N. E. 123, 61 L. R. A. 800, 93 Am. St. Rep. 600; McCarthy v. McCarthy, 137 N. Y. 500, 33 N. E. 550; Beadleston v. Beadleston, 103 N. Y. 402, 8 N. E. 735; and Poillon v. Poillon, 75 App. Div. 536, 73 N. Y. Supp. 323—are each authority for the proposition that the jurisdiction of the courts in this state in actions for divorce is limited to such powers as are expressly conferred by statute or necessarily incidental to such statutory powers.

The case at bar is not an action for divorce, separation, or a decree of nullity. Even in some actions for annulment of the marriage status it has been seen that equity possesses jurisdiction independently of statute. Griffin v. Griffin, 47 N. Y. 140. The case at bar is an action for revocation or modification of a mere contract of separation on the ground that the plaintiff's consent thereto was induced by fraud and duress. The jurisdiction of equity to entertain such a suit exists independently of any statute, and it is not limited in the exercise of that jurisdiction by the statutory provisions pertaining to alimony and counsel fees in actions for divorce, separation, or annulment.

As the plaintiff's application was denied by the learned Special Term on the ground of lack of jurisdiction to entertain or power to grant the same, it is not necessary to consider now whether the facts alleged in the moving papers show that a counsel fee is necessary to enable the plaintiff to prosecute this action. That question can be determined in future proceedings herein at the Special Term.

The order appealed from should be reversed, and the motion remitted to the Special Term for a hearing and determination upon the merits.

Order reversed, with $10 costs and disbursements, and motion remitted to Special Term for hearing and determination upon the merits. All concur.